UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., WARNER MUSIC LATINA INC., and ZOMBA RECORDING LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MONICA VASILENKO and DOES 1-10, d/b/a MP3SKULL.COM and MP3SKULL.TO,<br><br>Defendants. | COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs, by and through their counsel, on personal knowledge as to their own actions and on information and belief as to the actions, capabilities and motivation of others, hereby allege the following:

## INTRODUCTION

1. Plaintiffs are record companies that produce, manufacture, distribute, sell and license the great majority of all legitimate commercial sound recordings in this country. Defendants are the owners and operators of a website known as "MP3Skull" that, until recently, had the web address http://www.mp3skull.com and, since on or about February 24, 2015, has the web address http://www.mp3skull.to (Internet traffic to http://www.mp3skull.com is now automatically redirected to http://www.mp3skull.to). The MP3Skull website is devoted

# 1720245 v1

essentially to the piracy of Plaintiffs' sound recordings. Defendants designed, promote, support and maintain the MP3Skull website for the well-known, express and overarching purpose of reproducing, distributing, performing and otherwise exploiting unlimited copies of Plaintiffs' sound recordings without any authorization or license. Plaintiffs bring this action to stop Defendants' massive, deliberate and daily infringement of Plaintiffs' valuable copyrights.

2.  The scale of Defendants' infringement of Plaintiffs' copyrights is enormous. MP3Skull is one of the most notorious pirate websites in the world, providing fast and easy access to millions of copies of popular sound recordings, including copies of Plaintiffs' works, without authorization or license. The MP3Skull website holds itself out as "an easy way to listen [sic] and download music. You can find your favorite song in our multimillion [sic] database of quality mp3 links." By providing to the public the fruits of Plaintiffs' investment of money, labor and expertise, Defendants' illegal enterprise inflicts tremendous and irreparable damage on Plaintiffs' business and erodes legitimate sales and licenses of sound recordings through both traditional and online channels.

3.  To accomplish their infringement, Defendants have compiled, and continue to compile, a vast index of unauthorized links to infringing copies of the most popular sound recordings in the world and have organized and published those links on the MP3Skull website. Using the website and social media, Defendants actively encourage consumers to use those unauthorized links to download permanent infringing copies of sound recordings or to digitally stream them through the MP3Skull website. As a result of Defendants' active and intentional facilitation, inducement and encouragement of copyright infringement, MP3Skull has become one of the preeminent sources of unauthorized, "free" music files on the Internet. Indeed, reflecting the website's global prominence as a source of music piracy, the United Kingdom's

High Court of Justice has ordered the United Kingdom's Internet service providers to block their users' access to the MP3Skull website, and, in 2014, the United States Trade Representative included the website in its list of "Notorious Markets" for online piracy.[1]

4. Defendants profit handsomely from their operation of the website. Through the promise and illicit delivery of free music, Defendants are able to attract millions of users to the MP3Skull website and thereby generate substantial ill-gotten revenues, through advertisements and otherwise. Defendants' entire business amounts to nothing more than a massive infringement of Plaintiffs' exclusive rights under the Copyright Act. Plaintiffs are entitled to preliminary and permanent injunctive relief to stop Defendants' brazen violation of Plaintiffs' rights. Plaintiffs are further entitled to damages, as detailed below.

## NATURE OF THE ACTION

5. This is a civil action seeking equitable relief and damages for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.

6. Under Section 106 of the Copyright Act, Plaintiffs have the distinct, severable and exclusive rights to, among other things, reproduce and distribute their works to the public and to perform those works publicly by means of a digital audio transmission. 17 U.S.C. § 106(1), (3), (6).

7. Plaintiffs seek a declaration that Defendants willfully infringe Plaintiffs' copyrights under federal law. Plaintiffs also seek an injunction prohibiting Defendants from further infringement of Plaintiffs' copyrights and an injunction, pursuant to Section 502 of the Copyright Act (17 U.S.C. § 502(a)), 28 U.S.C. § 1651(a), and this Court's inherent equitable

---

[1] *See* United States Trade Representative, "2013 Out-of-Cycle Review of Notorious Markets" (Feb. 12, 2014) at 8, *available at* http://www.ustr.gov/sites/default/files/FINAL-PUBLISHED%202013_Notorious_Markets_List-02122014.pdf.

# 1720245 v1

powers, prohibiting Defendants and third parties with notice of the injunction from facilitating access to or providing support for any or all domain names and websites through which Defendants infringe Plaintiffs' copyrights and other rights in Plaintiffs' sound recordings. Plaintiffs also seek actual damages or statutory damages in the amount of $150,000 for each infringed work as allowed under Section 504 of the Copyright Act for willful copyright infringement.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. The Court has personal jurisdiction over Defendants because the acts of infringement and other misconduct complained of are "tortious act[s]" committed "within this state" under Fla. Stat. § 48.193(1)(a)(2).  The MP3Skull website and service are freely accessible to Florida residents, and Defendants infringe Plaintiffs' works and those of other copyright holders by facilitating the electronic transmission and/or performance of those works to Florida residents.

10. Personal jurisdiction over Defendants is also proper because Defendants are "operating, conducting, engaging in, or carrying on a business or business venture" in Florida under Fla. Stat. § 48.193(1)(a)(1).  Defendants have contracted with WZ Communications Inc., a website hosting service provider based in Fort Lauderdale, Florida, to provide Internet hosting services to Defendants for the MP3Skull website.  These services, obtained through Defendants' collaboration with a Florida corporation, are essential to the operation of the MP3Skull website and result in Defendants' pecuniary benefit.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d) and/or 28 U.S.C. § 1400(a). On information and belief, a substantial part of the acts of infringement complained of herein occurs or has occurred in this District. Defendants are not, on information and belief, residents of the United States.

## THE PARTIES

*The Plaintiffs*

12. Plaintiffs are well-known record companies. They are in the business of producing, manufacturing, distributing, selling, licensing, and facilitating the distribution, sale, public performance and other authorized uses of sound recordings (*i.e.*, recorded music) in the United States. The considerable artistic and technical quality of Plaintiffs' sound recordings is well-known in Florida, and throughout the United States and the world.

13. Plaintiff Arista Records LLC, is a Delaware limited liability company with its principal place of business in New York, New York.

14. Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

15. Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in California.

16. Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

17. Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

18. Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.

19. Plaintiff Sony Music Entertainment US Latin LLC is a Delaware limited liability company with its principal place of business and headquarters in Coconut Grove, Florida.

20. Plaintiff UMG Recordings, Inc. ("UMG") is a Delaware corporation with its principal place of business in Santa Monica, California. UMG is registered to do business in Florida and maintains an office in Miami, Florida.

21. Plaintiff Warner Bros. Records Inc. is a Delaware corporation with its principal place of business in Burbank, California.

22. Plaintiff Warner Music Group Corp. is a Delaware corporation with its principal place of business in New York, New York.

23. Plaintiff Warner Music Latina Inc. is a Delaware corporation with its principal place of business in Miami, Florida.

24. Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

25. Plaintiffs are the copyright owners or owners of exclusive rights with respect to the majority of copyrighted sound recordings sold in the United States, including sound recordings containing the performances of some of the most popular and successful recording artists of all time, such as the Beatles, Beyoncé, Bob Marley, Coldplay, Elton John, Kanye West, Lady Gaga, Led Zeppelin, Madonna, Metallica, Michael Jackson, and many more. Plaintiffs have invested and continue to invest significant money, time, effort, and creative talent to create, promote, sell, and license their sound recordings. Together, Plaintiffs own or control copyrights in the large majority of commercial sound recordings sold in the United States.

26. Plaintiffs distribute, sell, and/or license their sound recordings in the form of CDs and other tangible media throughout the United States, including in Florida. Plaintiffs also sell,

distribute, publicly perform and/or license their sound recordings in the form of digital audio files through legitimate and authorized Internet services, such as iTunes, Amazon, Beats Music, Rhapsody and Spotify, which are available throughout the United States, including in Florida.

27. Under the Copyright Act, Plaintiffs have the exclusive rights, among other things, to "reproduce the copyrighted work[s]" to "distribute copies or phonorecords of the copyrighted work[s] to the public," to "perform the copyrighted work publicly by means of a digital audio transmission," as well as to authorize or license such activities. 17 U.S.C. § 106.

28. A non-exhaustive, illustrative list of Plaintiffs' federally copyrighted sound recordings that Defendants have illegally reproduced, distributed and/or performed to their users is attached hereto as Exhibit A. Each Plaintiff has received Certificates of Copyright Registration from the Register of Copyrights for these copyrighted sound recordings.

### *The Defendants*

29. On information and belief, Defendants reside and operate the MP3Skull website from outside the United States, in the Russian Federation. MP3Skull does not provide information about its ownership or location, and conceals that information through private domain registration. For at least two brief periods in December 2010 and October 2013, however, MP3Skull's domain registration was visible to the public and indicated that the owner of the site was Monica Vasilenko at an address in Petrozavodsk, Russian Federation.

30. Does 1-10 are individuals who, along with Monica Vasilenko, own and/or operate the MP3Skull website, but whose identities and addresses are currently unknown to Plaintiffs. Defendants registered the MP3Skull domain in September 2010 and have operated the website continuously since.

## DEFENDANTS' ILLEGAL BUSINESS

31. MP3Skull is a website that is devoted to the infringement of copyrighted sound recordings on a massive scale, from which Defendants derive substantial revenue every year. At the core of MP3Skull is a database that, according to Defendants, contains millions of links to MP3 music files from around the Internet. MP3Skull advertises on its homepage that users "can find your favorite songs in our multimillion [sic] database of quality mp3 links" and that "MP3Skull is an easy way to listen [sic] and download music."

### *Functionality of the MP3Skull Website*

32. Users who visit MP3Skull can locate MP3 files (a popular format for digital music files) primarily in one of two ways. Users can either use a search box available on the site or browse through lists (curated by Defendants) of "Top Downloads," "Fresh Music," or "Now Playing," all of which are prominently displayed to the user. Most, if not all, of the files on those lists are typically copyrighted sound recordings.

33. To help users find whatever MP3 files they desire even more quickly, MP3Skull includes "autocomplete" functionality in its search box, which suggests various search results to users as they type. For example, if a user types in only the three letters "kan," MP3Skull prompts the user to navigate to pages concerning "Kanye West," a well-known recording artist who records for one of Plaintiff UMG Recordings, Inc.'s family of record labels.

34. After a user enters a search query, MP3Skull directs users to search result pages, which contain links to MP3 files from MP3Skull's internal database. Each search result on a search result page contains: (a) a "download" link, which enables users to download the MP3 file; (b) a "play" link, which opens a small in-page player and begins playing the song; and (c) a "download full album" link, which, in fact, is just an elaborate advertisement scheme that

redirects the user to another site – Usearchmedia (http://www.usearchmedia.com) – purportedly to download a full-length album associated with the artist. However, attempting to access the album instead merely sends the user to forms to register for access to Usearchmedia.

35. MP3Skull's database of MP3 links is vast and contains links to an enormous number of Plaintiffs' copyrighted works. With only a few keystrokes, users can quickly and easily find numerous links to full-length, infringing copies of legendary sound recordings like Michael Jackson's "Thriller," Bruce Springsteen's "Born in the USA," and Adele's "Rolling In The Deep," to name just a few. The vast majority of MP3 files indexed on the MP3Skull website are infringing.

### *Defendants' Express, Willful Fostering Of Infringement*

36. Both on the MP3Skull website and in their official communications, Defendants openly encourage users to download copyrighted MP3 music files. On each search result page, MP3Skull provides instructions for downloading the MP3 files "for free" by simply clicking (or right-clicking) on the "download" link and saving the file to the user's personal hard drive.

37. Moreover, MP3Skull's official Twitter and Facebook pages contain several communications from Defendants openly encouraging users to download obviously infringing files, links to which were removed following takedown requests from copyright owners.[2] On several occasions, Defendants outlined various workarounds that users could employ to download MP3 files because the site was "forced" to "remove a huge amount of our searches" following takedown requests from copyright organizations.

---

[2] MP3Skull's official Facebook page is available here:
https://www.facebook.com/pages/mp3skullcom/230467293658614. MP3Skull's Twitter page is available here: https://twitter.com/mp3skullcom.

38.     For example, on June 26, 2012, Defendants informed users that "you have to be very creative when you are searching in our site" or else they would see messages indicating that the "content was removed due to copyrights [sic] owners' requests."  Defendants provided "tips how to workaround this" issue, including:  "1. Repeat[ing] names, or whole words – 'where have have you been rihanna rihanna'"; "2. Remov[ing] some words – 'have been rihanna'"; and "3. Mak[ing] transition of the words – 'been rihanna have.'"[3]  The post concluded with the protest that "[w]e will not let some shitty organisation to [sic] win! Long live free mp3s!"

39.     Similarly, on July 11, 2012, Defendants echoed these instructions after they were "forced AGAIN to remove a huge amount of our searches from the same shitty organization." Defendants provided the same "tips how to work around this" and encouraged users to search for music from major-label recording artists Rihanna and Justin Bieber by: "1. Repeat[ing] names, or whole words – 'where have have you been rihanna rihanna'; 2. Remov[ing] some words – 'have been rihanna'; 3. Mak[ing] transition of the words – 'been rihanna have'; and "4. . . . repeat[ing] 2 or 3 words 2 or 3 times: 'as long as long you love me justin justin justin.'"

40.     Less than two weeks later, on July 24, 2012, Defendants complained of "[a]nother strike from [sic] organization" and encouraged users to "be very creative again to find some songs.  We were forced to remove one of our top songs - Flo Rida Whistle - here [sic] a new link to it:  http://MP3Skull/mp3/whistle_flo_rida_flo_rida.html."   Again, Defendants openly encouraged their users to access major record label content and provided the means to do so (here, a new link to a copyrighted track from major-label recording artist Flo Rida) in spite of the takedown requests.

---

[3] Rihanna is another well-known recording artist who also records for one of Plaintiff UMG Recording's family of record labels.

41. In October 2013, the United Kingdom's High Court of Justice issued an order requiring Internet service providers throughout the United Kingdom to block their users' ability to access MP3Skull based on the court's finding that MP3Skull infringed the copyrights of major recording companies. Immediately following the High Court's order, Defendants complained openly of the block and encouraged users of MP3Skull to find a "suitable solution and workaround," such as a "bypassing proxy or something," and asked users to post those solutions in comments on MP3Skull's Facebook post.

42. As a direct result of Defendants' widespread and brazen infringement of Plaintiffs' copyrighted works, MP3Skull has become one of the most popular illicit music-download sites on the Internet, attracting millions of users from the United States and generating significant revenue for Defendants. Independent studies estimate that MP3Skull attracts roughly one million unique visitors from the United States each month,[4] which popular web traffic site Alexa estimates to represent roughly 17% of MP3Skull's global traffic.[5] The popularity of MP3Skull has enabled Defendants to enrich themselves greatly, at the expense of copyright owners like Plaintiffs, whose sound recordings are pirated on an immense scale on MP3Skull on a daily basis.

## COUNT ONE

### (Direct Copyright Infringement)

43. Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

---

[4] Compete.com, Site Analytics for MP3Skull, available at https://siteanalytics.compete.com/MP3Skull, last visited April 16, 2015.

[5] Alexa.com, Site Info for MP3Skull, available at http://www.alexa.com/siteinfo/MP3Skull.to, last visited April 16, 2015.

44. Defendants, without permission or consent of Plaintiffs, reproduce and distribute unauthorized reproductions of Plaintiffs' copyrighted sound recordings, and engage in unauthorized public performances of copyrighted sound recordings, including but not limited to those copyrighted sound recordings listed in Exhibit A hereto. Such reproduction, distribution and performance constitutes infringement of Plaintiffs' registered copyrights and the exclusive rights under copyright in violation of 17 U.S.C. § 106(1), (3) and (6).

45. The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

46. Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

47. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

48. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

49. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT TWO

### (Secondary Copyright Infringement)

50. Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 49 as if fully set forth herein.

51. As detailed above, users of the MP3Skull website are engaged in repeated and pervasive infringement of Plaintiffs' exclusive rights to reproduce, distribute and publicly perform their copyrighted recordings.

52. Defendants are liable under the Copyright Act for inducing the infringing acts of the users of MP3Skull. Defendants operate the MP3Skull website with the object of promoting its use to infringe Plaintiffs' copyrights.

53. Defendants knowingly and intentionally induce, entice, persuade, and cause users of the MP3Skull website to infringe Plaintiffs' copyrights in their sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

54. Through these activities, among others, Defendants knowingly and intentionally take steps that are substantially certain to result in direct infringement of Plaintiffs' sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

55. Despite their knowledge that infringing material is made available to users by means of MP3Skull, Defendants have failed to take reasonable steps to minimize the infringing capabilities of the website.

56. Defendants are liable as contributory copyright infringers for the infringing acts of users of the MP3Skull website. Defendants have actual and constructive knowledge of both

the infringing activity of the sites to which MP3Skull links and the infringing activity of MP3Skull's users. Defendants knowingly cause and otherwise materially contribute to these unauthorized reproductions, distributions, and public performances of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

57. Defendants are vicariously liable for the infringing acts of users of the MP3Skull website. Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their website, and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights. Defendants have refused to take any meaningful action to prevent the widespread infringement by its users. Defendants are therefore vicariously liable for the unauthorized reproduction, distribution, and public performance of Plaintiffs' copyrighted sound recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

58. The infringement of Plaintiffs' rights in each of their copyrighted sound recordings constitutes a separate and distinct act of infringement.

59. Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

60. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial.

61.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

62.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

(a)     for a declaration that Defendants, both directly and secondarily, willfully infringe Plaintiffs' copyrights;

(b)     for such equitable relief under Titles 17 and 28 as is necessary to prevent or restrain infringement of Plaintiffs' copyrights, including:

i.      a preliminary injunction and a permanent injunction requiring that Defendants and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, (a) cease infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created; and (b) surrender, and cease to use, the domain names of www.mp3skull.to, www.mp3skull.com, and any variant thereof owned or controlled by Defendants (such as www.mp3-skull.biz);

ii.     entry of an Order, pursuant to Section 502 of the Copyright Act (17 U.S.C. § 502), 28 U.S.C. § 1651(a), and this Court's inherent equitable powers,

(A)     enjoining Defendants and all third parties with notice of the Order, including any Web hosts, domain-name registrars, domain name registries or their administrators, from

facilitating access to any or all domain names, URLs and websites (including, without limitation, www.MP3Skull.com and www.MP3Skull.to) through which Defendants infringe Plaintiffs' copyrights;

    (B)    requiring domain name registries (including VeriSign, Inc.) and/or registrars holding or listing Defendants' domain names and websites (including, without limitation, www.MP3Skull.com and www.MP3Skull.to) through which Defendants infringe Plaintiffs' copyrights to: (a) disable www.MP3Skull.com, www.MP3Skull.to and any related domain names specified by Plaintiffs through a registry hold or otherwise, and to make them inactive and non-transferable, and (b) transfer Defendants' domain names to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names and under Plaintiffs' ownership;

    (C)    enjoining all third parties with notice of the Order from maintaining, operating, or providing advertising, financial, technical or other support to MP3Skull and any other domain names, URLs or websites through which Defendants infringe Plaintiffs' copyrights, including without limitation www.MP3Skull.com and www.MP3Skull.to; and

    (D)    enjoining all third-party distributors of applications, toolbars or similar software with notice of the Order from distributing any applications, toolbars or similar software applications that interoperate with any domain names, URLs or websites through which Defendants infringe Plaintiffs' copyrights, including without limitation www.MP3Skull.com and www.MP3Skull.to.

    (c)    for statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 per infringed work, arising from Defendant's violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages, including Defendant's profits from infringement, in amounts to be proven at trial;

  (d) for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and otherwise;

  (e) for prejudgment and post-judgment interest; and

  (f) for such other relief as the Court may deem just and proper.

Dated:  April 17, 2015        Respectfully submitted,

           By: /s/ Karen L. Stetson
             Karen L. Stetson

             GRAY-ROBINSON, P.A.
             Karen L. Stetson (FL Bar No. 742937)
             333 S.E. Second Avenue, Suite 3200
             Miami, Fl 33131
             Telephone: (305) 416-6880
             Facsimile: (305) 416-6887

             JENNER & BLOCK LLP
             Kenneth L. Doroshow (*Pro Hac Vice to be filed*)
             Amir H. Ali (*Pro Hac Vice to be filed*)
             1099 New York Ave., N.W.
             Suite 900
             Washington, DC 20001
             Telephone:  (202) 639-6000
             Facsimile: (202) 639-6066

             *Attorneys for Plaintiffs*