# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI-DADE DIVISION

Case No. 15-cv-21450-COOKE/TORRES

| | |
|---|---|
| ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, CAPITOL RECORDS, LLC, ELEKTRA ENTERTAINMENT GROUP INC., LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT, SONY MUSIC ENTERTAINMENT US LATIN LLC, UMG RECORDINGS, INC., WARNER BROS. RECORDS INC., WARNER MUSIC GROUP CORP., WARNER MUSIC LATINA INC., and ZOMBA RECORDING LLC, | **NON-PARTY CLOUDFLARE, INC.'S OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR CLARIFICATION** |
| Plaintiffs, | |
| v. | |
| MONICA VASILENKO and DOES 1-10, d/b/a MP3SKULL.COM and MP3SKULL.TO, | |
| Defendants. | |

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

I.    SECTION 512(J) OF THE COPYRIGHT ACT LIMITS THE SCOPE OF
INJUNCTIONS AGAINST ONLINE SERVICE PROVIDERS LIKE
CLOUDFLARE IN COPYRIGHT CASES. ..........................................................3

    A.    CloudFlare is an Online Service Provider as Defined by OCILLA............4

    B.    Plaintiffs' Expedited Motion Does Not Comply with Section 512(j)'s
Scope Limitations Afforded to CloudFlare as an Online Service
Provider. ....................................................................................6

II.    SECTION 512(J) REQUIRES THAT CLOUDFLARE RECEIVE NOTICE AND
A MEANINGFUL OPPORTUNITY TO BE HEARD BEFORE PLAINTIFFS
MAY OBTAIN AN INJUNCTION AGAINST IT AND LOCAL RULE 7.1(D)
REQUIRES A TRUE EMERGENCY. ..................................................................9

III.    TO THE EXTENT THE COURT IS WILLING TO OVERLOOK PLAINTIFFS'
VIOLATIONS OF THE REQUIREMENTS OF SECTION 512(J) AND LOCAL
RULE 7.1(d), THE COURT SHOULD EITHER REQUIRE SUPPLEMENTAL
BRIEFING SPECIFICALLY TO ADDRESS THE CRITERIA AND
LIMITATIONS OF AN INJUNCTION UNDER SECTION 512(J) OR ENTER
THE APPROPRIATE INJUNCTION THAT CLOUDFLARE PROPOSES. ......13

CONCLUSION....................................................................................................14

REQUEST FOR HEARING..................................................................................14

STATUTORY APPENDIX:  RELEVANT EXCERPTS OF ONLINE COPYRIGHT
INFRINGEMENT LIABILITY LIMITATION ACT 17 U.S.C. §  512 ................................APP-1

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arista Records, LLC v. Tkach*,
  122 F. Supp. 3d 32 (S.D.N.Y. 2015)..................................................................7, 8

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  No. 2:13-cv-01932 RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015) ...........................4

*North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*,
  No.1:10-cv-01630 (AKH), Dkt. No. 56 (S.D.N.Y. Jun 24, 2011)............................................8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .............................................................................4

*RIAA v. Verizon Internet Servs., Inc.*,
  351 F.3d 1229 (D.C. Cir. 2003) ..........................................................................12

*Schenck v. Orosz*,
  No. 3:13-cv-0294, 2013 WL 5963557 ...............................................................10

*TVB Holdings (USA), Inc. v. eNom, Inc.*,
  No. 8:13-cv-000624-JLS DFMX, 2014 WL 3717889, at *5 (C.D. Cal. July 23,
  2014) ..........................................................................................................10

*Wolk v. Kodak Imaging Network, Inc.*,
  No. 1:10-cv-04135 RWS, 2011 WL 940056 (S.D.N.Y. Mar. 17, 2011) ................................4

**STATUTES**

17 U.S.C. § 502.....................................................................................................6

17 U.S.C. § 512........................................................................................... *passim*
  § 512(a)........................................................................................5, 6, 7, 12
  § 512(b)........................................................................................5, 6, 7, 14
  § 512(c)..................................................................................................5
  § 512(d)..................................................................................................5
  § 512(h)................................................................................................12
  § 512(i)...............................................................................................5, 7
  § 512(j).......................................................................................... *passim*
  § 512(n)..................................................................................................5

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

ii

## TABLE OF AUTHORITIES

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 65(d) ............................................................................................8

Civil Local Rule 7.1(d) ................................................................................................2, 9, 13

## <u>INTRODUCTION</u>

CloudFlare, Inc. is not a party to this litigation.  It is an online service provider that offers Internet security and website optimization services to a wide variety of customers.  CloudFlare specifically provides Internet connections and protection against malicious attacks to operators of over 4 million web sites, including for such companies and organizations as some of the Plaintiffs themselves as well as the Federal Bureau of Investigation, NASDAQ, World Economic Forum, Bain Capital, Metallica (the Band), Cisco Systems, Reddit, and numerous state and national governments.  Declaration of Kenneth Carter ("Carter Dec.") at ¶ 4.

CloudFlare takes no sides in this litigation.  It does not oppose an appropriate injunction that both abides by the Copyright Act's injunction provisions for online service providers and also conforms to proper procedure.  But Plaintiffs have come into this Court, on a so-called "expedited" motion, with disregard for both this Court's local rules regarding "emergency" motions and the careful limitations and procedures that Congress wrote into the Copyright Act regarding the application of injunctions to online service providers like CloudFlare.

The Online Copyright Infringement Limitation Liability Act (OCILLA), part of the Digital Millennium Copyright Act (DMCA) codified within the Copyright Act at 17 U.S.C. § 512, addresses the role of online service providers like CloudFlare.  CloudFlare reproduces relevant portions of Section 512 in an appendix to this brief.

Section 512(j) prescribes specific standards and procedures for injunctions against service providers like CloudFlare in copyright cases.  It places strict limits on injunctions against eligible service providers.  17 U.S.C. § 512(j)(1).  It specifies criteria that courts "shall consider" when evaluating a request for injunctive relief against a service provider.  17 U.S.C. § 512(j)(2).  And it requires that a service provider have notice and an opportunity to appear, before a party may

bind it with an injunction.  17 U.S.C. § 512(j)(3).  *Plaintiffs ignored those requirements entirely.*

Earlier in this litigation, Plaintiffs obtained the permanent injunction after a default judgment against an overseas individual whom they accused of operating an illegal music site. Dkt. No. 37 (March 22, 2016).  Although Plaintiffs obtained that injunction in March, they did not give CloudFlare notice and an opportunity to be heard on the injunction's application to it. Carter Dec. at ¶ 10.  Instead, Plaintiffs' counsel waited over three months, until June 30, 2016, before bringing the injunction to CloudFlare's attention when its counsel told CloudFlare it was "in active concert and participation" with the Defendant and therefore was required to meet Plaintiffs' demands immediately.  Carter Dec. at ¶ 11, Ex. C [June 30, 2016 Doroshow email to Carter].  CloudFlare responded that it did not believe that the existing injunction applied to it, that an injunction should properly specify its application to CloudFlare, and that Plaintiffs should follow proper procedures in connection with obtaining an injunction naming CloudFlare.  *Id.* at ¶ 12, Ex. D [July 1, 2016 Carter email to Doroshow].

Plaintiffs' counsel waited over a month after that exchange and then, rather than following the procedures required by Section 512(j), filed this "expedited" motion for "clarification" that the earlier injunction against Defendant applies to CloudFlare.  Plaintiffs' expedited motion does not conform to the limitations of Section 512(j)(1), does not address the criteria that require consideration under Section 512(j)(2), and failed to give proper notice and an opportunity to appear under Section 512(j)(3).  On top of those shortcomings, Plaintiffs also ignored the requirements of this Court's Local Rule 7.1(d) regarding emergency motions.

Plaintiffs' motion lacks candor in several respects.  First, Plaintiffs misleadingly imply that they have been arguing with CloudFlare about the injunction since March.  In fact, they sprung notice of the injunction and their demands only at the end of June.  Carter Dec. at ¶¶ 10-

11, Ex. C [June 30, 2016 Doroshow email to Carter].  Second, Plaintiffs wrongly suggest that CloudFlare has been obstinate in refusing to assist Plaintiffs, failing to acknowledge that CloudFlare provided significant cooperation to Plaintiffs earlier in the case, as early as May 20, 2015, by providing IP addresses and identities of hosting providers and by passing notifications of claimed infringement through to the hosting providers, which Plaintiffs acknowledged in earlier filings (Dkt. 36-2 ¶ 8 and 36-4 (emails from CloudFlare); Dkt. 38-1 at ¶ 6 and 38-4 (emails from CloudFlare).  *See also* Carter Dec. at ¶ 15.   Third, Plaintiffs' motion also omitted all reference to the limitations on, and requirements for, injunctions against online service providers in section 512(j), which threatened to lead this Court astray on important and relevant limitations on the Court's power.  Plaintiffs, all member companies of the RIAA, should know better:  they helped write the very provisions that they have ignored before this Court. Declaration of Andrew Bridges ("Bridges Dec.") at ¶ 3, Ex. B [historical RIAA webpages].

There is a correct way to seek a copyright injunction against an online service provider like CloudFlare, and CloudFlare remains willing to comply with a proper order for injunctive relief that satisfies the requirements of Section 512(j) of OCILLA.  But because Plaintiffs' "expedited" motion for "clarification" fails basic tests and ignores the law and local rules, the Court should deny the motion without prejudice to a new and procedurally proper motion that seeks an injunction conforming to Section 512(j) of OCILLA.

## I.   SECTION 512(J) OF THE COPYRIGHT ACT LIMITS THE SCOPE OF INJUNCTIONS AGAINST ONLINE SERVICE PROVIDERS LIKE CLOUDFLARE IN COPYRIGHT CASES.

OCILLA prescribes specific standards for injunctions against online service providers that meet the qualifications for the "safe harbor" in 17 U.S.C. § 512.  Plaintiffs have not challenged CloudFlare's safe harbor qualification.

Under the safe harbor framework, a service provider is subject "only to the narrow injunctive relief set forth in section 512(j)." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007); *see also Wolk v. Kodak Imaging Network, Inc.*, No. 1:10-cv-04135 RWS, 2011 WL 940056, at *7 (S.D.N.Y. Mar. 17, 2011) (denying injunctive relief requested by plaintiff because it failed to comport with injunctive relief available under Section 512(j)). "[E]ven if a plaintiff can show that a safe harbor-eligible service provider has violated her copyright, the plaintiff will only be entitled to the limited injunctive relief set forth in 17 U.S.C. § 512(j)." *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. 2:13-cv-01932 RSM, 2015 WL 4394673, at *6 (W.D. Wash. July 16, 2015) (quoting *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004)).

### A.     CloudFlare is an Online Service Provider as Defined by OCILLA.

CloudFlare is an online service provider.  CloudFlare provides content delivery network services, Internet optimization and security services, and other performance services for websites.  Carter Dec. at ¶ 2.  When a person visits the website of a CloudFlare customer, CloudFlare routes that web traffic through its global, distributed network.  *Id.* at ¶¶ 2-3.  This allows CloudFlare to apply security and traffic optimization measures to make sure that a user's webpage loads faster and to reduce the incidence of malicious attacks.  *Id.*  CloudFlare has won a number of industry awards for Internet services; for instance, the Wall Street Journal gave CloudFlare back-to-back Technology Innovation Awards in 2011 and 2012, and TechCrunch named it Best Enterprise Startup in 2015.  *Id.* at ¶ 5.

CloudFlare largely acts as a "pass-through network" (or conduit) for data transferred between two or more Internet users, i.e., a website visitor and the hosting server for that website.  Carter Decl. at ¶ 7, Ex. A [CloudFlare Terms of Service].  In some cases, CloudFlare also

"caches content for a limited period in order to improve network performance." *Id.* Moreover, "CloudFlare is not a hosting provider and has no way of removing abusive content on third party hosting services." *Id.*

OCILLA established separate safe harbors for each of four different functions of an online service provider: transitory digital network communications or conduit services (i.e., pass-through networks), 17 U.S.C. § 512(a); system caching services, 17 U.S.C. § 512(b); hosting services, where information resides on systems or networks at the direction of users, 17 U.S.C. § 512(c); and information location or linking services, 17 U.S.C. § 512(d). These different subsections "describe separate and distinct functions" that an entity may provide, and a service provider may qualify for safe harbor under multiple different subsections. 17 U.S.C. § 512(n). CloudFlare's services fall within two of these safe harbors. With respect to its activities as a provider of transitory digital network communications (or "conduit") services, CloudFlare has safe harbor under Section 512(a). Meanwhile, with respect to CloudFlare's caching activities to protect its customers' web sites, CloudFlare has safe harbor under Section 512(b).

Beyond the technical criteria under subsections (a) through (d), OCILLA conditions its limitations of liability on two requirements. First, the limitation of liability is available only if the service provider "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Second, the service provider must accommodate "standard technical measures." 17 U.S.C. § 512(i)(1)(B). CloudFlare meets both of these requirements. Carter Decl. at ¶ 8, Ex. A [CloudFlare Terms of Service], Ex. B [CloudFlare Abuse Policy]. Accordingly, CloudFlare qualifies for safe harbor as

a provider of both Section 512(a) and Section 512(b) services.

**B.     Plaintiffs' Expedited Motion Does Not Comply with Section 512(j)'s Scope Limitations Afforded to CloudFlare as an Online Service Provider.**

Plaintiffs might have brought this new motion as a fresh request for an injunction specifically applying to CloudFlare, but for some reason they chose not to.  Instead, they style their expedited motion as one for "clarification" that the March 22, 2016 injunction applies to CloudFlare.  This is no different than seeking injunctive relief from CloudFlare, since Section 512(j) governs "*any* application for an injunction under section 502 against a service provider" eligible for safe-harbor protection.  17 U.S.C. § 512(j) (emphasis added).  Plaintiffs' procedural and semantic choices do not obviate the requirement to comply with Section 512(j).[1]  If, as an alternative, Plaintiffs seek to have their "clarification" motion treated as a motion for a fresh injunction, then their failure to brief the criteria and limitations of Section 512(j) injunctions should doom this motion.  *Again, CloudFlare has no objection to an injunction that meets the standards of Section 512(j) and follows proper procedures.*  But that is not what this motion seeks.

The permanent injunction that Plaintiffs seek to enforce against CloudFlare in this case is much broader than any remedy authorized by OCILLA.  This is not surprising, as Plaintiffs developed the terms of this injunction against a defaulted defendant without regard to CloudFlare or Section 512(j)'s substantive limitations on injunctions.  CloudFlare provides two different

---

[1] Section 502 authorizes courts to provide injunctive relief as a remedy for copyright infringement.  17 U.S.C. § 502.  In their complaint, Plaintiffs alleged only claims for copyright infringement and expressly sought a copyright injunction under Section 502.  *See* Dkt. No. 1, ¶¶ 49, 62 ("Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.").  Plaintiffs' later request for a permanent injunction again invoked Section 502.  *See* Dkt. No. 26 at 11 ("Section 502(a) of the Copyright Act specifically authorizes the court to issue injunctive relief. . . .).

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

6

types of services, which fall under subsections (a) and (b) of Section 512.  Section 512(j)

authorizes different scopes of injunctions for services under those two different subsections.  The

more liberal provision in Section 512(j)(1)(A), applicable to CloudFlare as a Section 512(b)

service, limits injunctions to the following: [2]

> (i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.

> (ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

> (iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.

> Plaintiffs' proposed injunction goes well beyond those permitted scopes.  Instead of

being limited to termination of specific account holders, or narrowly tailored remedies focused

on "particular online locations," Plaintiffs' proposed injunction would force CloudFlare—which

provides services to millions of websites—to investigate open-ended domain letter-string ("any

website with the word 'mp3skull' in its domain name") and IP address combinations to comply

with the injunction.  *See* Plaintiffs' Proposed Order at ¶ 3(ii) (Dkt. 38-3).

> Plaintiffs' motion discusses another case, *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d

---

[2] Section 512(j)(1)(B), applicable to CloudFlare as a Section 512(a) service, limits injunctions to the following:

> (i)     An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is using the provider's service to engage in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

> (ii)    An order restraining the service provider from providing access, by taking reasonable steps specified in the order to block access, to a specific, identified, online location outside the United States.

32 (S.D.N.Y. 2015), which also involved CloudFlare.  But Section 512(j) did not apply in that case because the injunction at issue in that case rested upon *trademark, not copyright,* claims. The Lanham Act concerns trademarks and has no analogue to Section 512(j) of the Copyright Act.  Contrary to Plaintiffs' assertion, the *Tkach* case only incidentally concerned copyright issues because it involved trademark and cyber-squatting claims that arose from attempts to enforce stipulated consent judgments negotiated between the music industry and Escape Media Group, Inc., a copyright defendant in two earlier lawsuits.  122 F. Supp. 3d at 33.  Escape Media formerly operated the website grooveshark.com ("Grooveshark").  *Id.*  As part of the settlement in one of those lawsuits, Escape Media conveyed ownership of its federally registered trademarks relating to the Grooveshark service to one of the plaintiffs.  *Id.*  Shortly after the entry of the consent judgments, a "copycat" version of Grooveshark appeared on the Internet.  *Id.* Plaintiffs obtained a temporary restraining order to enjoin use of the Grooveshark trademarks, and then they sought to enforce that order against CloudFlare.  *Id.* at 33-34.  In a typical case, Rule 65(d) of the Federal Rules of Civil Procedure articulates the scope of an injunction, and in *Tkach* only Rule 65(d) applied.[3]  But as discussed above, Section 512(j) imposes special restrictions on, and requirements for, a copyright-based injunction against a qualifying service provider, and Section 512(j) governs this case.

Accordingly, this Court should deny Plaintiffs' expedited motion for clarification.  Any injunction Plaintiffs seek against CloudFlare must meet the criteria, and comply with the scope limitations, of Section 512(j).  The overbroad and improper injunction Plaintiffs seek does not do so, and the Court should deny the motion without prejudice to a new motion that meets the

---

[3]  *North Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd.*, No.1:10-cv-01630 (AKH), Dkt. No. 56 (S.D.N.Y. Jun 24, 2011), a counterfeiting case that Plaintiffs also cite, is distinguishable on the same basis.

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

8

procedural and substantive standards.

## II.  SECTION 512(J) REQUIRES THAT CLOUDFLARE RECEIVE NOTICE AND A MEANINGFUL OPPORTUNITY TO BE HEARD BEFORE PLAINTIFFS MAY OBTAIN AN INJUNCTION AGAINST IT AND LOCAL RULE 7.1(D) REQUIRES A TRUE EMERGENCY.

Plaintiffs' request is also procedurally unsound.  An "expedited motion for clarification" is an improper vehicle for seeking an injunction against an online service provider such as CloudFlare.  By ignoring the procedures and limitations of Section 512(j) and by flouting this Court's requirements for an "emergency" motion, Plaintiffs try to rob CloudFlare of its statutory due process rights under OCILLA.

As a threshold matter, Local Rule 7.1(d) requires that Plaintiffs submit a Certification of Emergency along with any request for "expedited" relief.  Civ. L.R. 7.1(d).  "The filer must certify that the matter is a true emergency."  *Id.*  Plaintiffs fail to make any such certification, and in any case this is not an emergency.  The Rule states that "[m]otions are not considered emergencies if the urgency arises due to the attorney's or party's own dilatory conduct."  *Id.* Here, any putative urgency Plaintiffs may claim arises from their own conduct: they obtained the permanent injunction in March 2016, and sat on it for months before even alerting CloudFlare of any intention to apply it against CloudFlare.  Thus, Plaintiffs fail to satisfy the requirements of Local Rule 7.1(d).

Plaintiffs also ignore the procedures of Section 512(j).  OCILLA affords service providers the right to participate in fashioning a suitable copyright injunction.  Towards that end, Section 512(j)(3)—titled "Notice and ex parte orders"—generally requires that service providers have notice and an opportunity to be heard before imposing injunctive relief against them: "Injunctive relief under this subsection shall be available *only* after notice to the service provider

and an opportunity for the service provider to appear are provided. . . ."[4]  17 U.S.C. § 512(j)(3)

(emphasis added).  The drafters of OCILLA contemplated circumstances where copyright

holders might seek *ex parte* orders binding service providers, and they prohibited rightsholders

from doing so.

Plaintiffs' interpretation of this Court's default permanent injunction runs afoul of these

requirements and "would entail enjoining a potentially limitless number of non-parties without

notice to them."  *See TVB Holdings (USA), Inc. v. eNom, Inc.*, No. 8:13-cv-000624-JLS DFMX,

2014 WL 3717889, at *5 (C.D. Cal. July 23, 2014) (denying motion for permanent injunction

with respect to "any and all registrars and resellers of the web domains from transferring

ownership of the domain names" and "any and all companies providing website services for the

web domains from providing such services and providing access to the website domains"); *cf.*

*Schenck v. Orosz*, No. 3:13-cv-0294, 2013 WL 5963557, at *8 n.15 & *14 (M.D. Tenn. Nov. 7,

2013) (allowing preliminary injunction to restrain *defendants* from causing service provider to

replace materials identified in takedown notices).

CloudFlare had no notice that Plaintiffs contemplated any injunction against it until June

30, 2016, roughly one month ago.  Carter Decl. at ¶ 11; *see also* Dkt. No. 38-2 [Doroshow Dec.]

at ¶ 3.  And now Plaintiffs seek "clarification" of the previous injunction, to apply it against

CloudFlare, on an expedited basis to limit CloudFlare's opportunity to defend against an

improper request.  The original injunction, had it originally been intended to apply to

CloudFlare, unambiguously violated the procedural requirements and scope restrictions of

Section 512(j).  If the Court were to grant Plaintiffs' motion for "clarification" of that injunction,

---

[4] This notice rule has only two exceptions, i.e. "for orders ensuring the preservation of evidence
or other orders having no material adverse effect on the operation of the service provider's
communications network," and these exceptions do not apply here.  17 U.S.C. § 512(j)(3).

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

10

CloudFlare and other service providers would face threats of contempt by heavy-handed

plaintiffs, who, like the Plaintiffs here, ask the Court to extend its equitable power to non-party

online service providers without candidly addressing the statutory requirements and restrictions

of Section 512(j).  That is precisely the harm that the notice requirement of Section 512(j) aimed

to avoid.

OCILLA also provides specific criteria that a court must consider before granting

injunctive relief against a qualifying service provider.  *See* 17 U.S.C. § 512(j)(2).  These include

> (A) whether such an injunction, either alone or in combination with other such
> injunctions issued against the same service provider under this subsection, would
> significantly burden either the provider or the operation of the provider's system
> or network; (B) the magnitude of the harm likely to be suffered by the copyright
> owner in the digital network environment if steps are not taken to prevent or
> restrain the infringement; (C) whether implementation of such an injunction
> would be technically feasible and effective, and would not interfere with access to
> noninfringing material at other online locations; and (D) whether other less
> burdensome and comparably effective means of preventing or restraining access
> to the infringing material are available.

*Id.*  Plaintiffs did not brief, and thus the Court did not consider, these factors when ruling on

Plaintiffs' motion for default judgment and for permanent injunction.  Nor do Plaintiffs make

any mention of these criteria in their current motion.  Allowing Plaintiffs, on an expedited basis,

to expand the scope of their permanent injunction against a defaulting defendant to apply it to

CloudFlare, without consideration of the burdens to CloudFlare as a service provider, prejudices

CloudFlare and violates Section 512(j)(2) of OCILLA.

Plaintiffs are familiar with the details of OCILLA, and the failure to mention its

applicability here is telling.  The Recording Industry Association of America (RIAA), the trade

organization to which all of the Plaintiffs belong, assisted in drafting these very provisions.

Bridges Dec. at ¶ 3, Ex. B [archival RIAA webpages].  Moreover, on March 31, 2016, while this

lawsuit was pending and after Plaintiffs obtained the permanent injunction they seek to clarify

now, the RIAA together with other members of the music community, submitted a joint

comment to the Copyright Office specifically acknowledging how Section 512(j) would apply

for injunctions against service providers involving offshore websites: "While this provision

should be read to mean an injunction can be applied to deter infringement from rogue sites,

recent court decisions suggest that any proposed injunction broader than a specific URL by URL

injunction, even if it included a representative list of the copyrighted works at issue, would be

difficult to obtain."  *Id.* at ¶ 2, Ex. A [Joint Comment] at 44-45.  Plaintiffs have no excuse, and

deserve no indulgence, for bypassing the procedures and limitations that the OCILLA prescribes.

This is not the first time that members of the RIAA have attempted to circumvent

OCILLA's procedures.  In *RIAA v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003),

the RIAA sought to apply the Section 512(h), the subpoena provision of OCILLA, to force

Verizon, a Section 512(a) "conduit" service provider, to divulge the identity of a subscriber who

allegedly used peer-to-peer software.  Verizon refused, arguing that the plain language of the

provision did not authorize that kind of subpoena in the Section 512(a) context.  The D.C. Circuit

agreed, noting that it could not depart from the legislative bargain reflected in the plain text of

the statute: "It is not the province of the courts, however, to rewrite the DMCA in order to make

it fit a new and unforeseen internet architecture, no matter how damaging that development has

been to the music industry or threatens being to the motion picture and software industries."

*RIAA*, 351 F.3d at 1238.  Just as the D.C. Circuit did in *Verizon*, this Court should not allow

Plaintiffs to ignore the plain language of OCILLA in search of a backdoor around its protections

of online service providers.

### III. TO THE EXTENT THE COURT IS WILLING TO OVERLOOK PLAINTIFFS' VIOLATIONS OF THE REQUIREMENTS OF SECTION 512(J) AND LOCAL RULE 7.1(D), THE COURT SHOULD EITHER REQUIRE SUPPLEMENTAL BRIEFING SPECIFICALLY TO ADDRESS THE CRITERIA AND LIMITATIONS OF AN INJUNCTION UNDER SECTION 512(J) OR ENTER THE APPROPRIATE INJUNCTION THAT CLOUDFLARE PROPOSES.

CloudFlare believes that this Court should hold the Plaintiffs accountable for following clear rules of the road, both the rules that apply to injunctions against online service providers in copyright cases and the rules that apply to emergency motions in this Court.  It is important to establish a clear precedent that willful blindness to the rules, by sophisticated Plaintiffs and their counsel, is no excuse, and for that reason the Court should deny this motion outright.

CloudFlare recognizes, however, the burden on the Court that such a ruling would cause, involving a new motion, another round of briefing, and further attention by the Court.  Without conceding the propriety of this motion, CloudFlare believes that Section 512(j) may permit an injunction with the following terms:

> Pursuant to 17 U.S.C. § 512(j), this Court orders non-party CloudFlare to terminate service to accounts identified in this order by the specific domain names below, which shall prevent CloudFlare from proxying through its network of any material which may reside on, or flow from, such domains.  The domains are:

mp3skull.at
mp3skull.cm
mp3skull.cr
mp3skull.cz
mp3skull.gd
mp3skull.is
mp3skull.la
mp3skull.mn
mp3skull.ms
mp3skull.pl
mp3skull.vg

That language comports with the scope limitations of Section 512(j), addresses all domain names that Plaintiffs have identified, and avoids undue burdens and jeopardy upon

CloudFlare as a Section 512(a) and (b) service provider.  If Plaintiffs identify further domain names to the Court and seek to enlarge the injunction, CloudFlare would not oppose such an amendment on an expedited basis on the assumption that the amendment is a natural extension of this injunction and does not go off in a different direction without justification.  What CloudFlare cannot do, and which the Court should not require, is to serve as a deputy for the Plaintiffs and their RIAA trade association in investigating and identifying further targets of an injunction.

If Plaintiffs are unwilling to adopt such an injunction as the outcome here, then the Court should simply deny the motion and Plaintiffs should have an obligation to justify in detail any other form of injunction that they want, with specific reference to the criteria and limitations of Section 512(j).

## CONCLUSION

For the reasons CloudFlare explained above, the Court should either deny Plaintiffs' motion in its entirety or adopt CloudFlare's proposal for an injunction with a scope that respects the express limitations of the Online Copyright Infringement Liability Limitation Act.

## REQUEST FOR HEARING

CloudFlare respectfully requests a hearing because of the unique nature of CloudFlare's business, and the technical aspects, constraints, and limitations involved.  CloudFlare further believes it might be of assistance to the Court with respect to the Online Copyright Infringement Limitation Liability Act and its application to online service providers like CloudFlare.  These issues have not been addressed before the Court in this case given the default nature of the proceedings.  CloudFlare estimates that a hearing should require no more than one hour. CloudFlare requests that a hearing occur no earlier than August 22, 2016, because of currently scheduled business travel to Japan by CloudFlare's lead counsel.

Dated: August 12, 2016

Respectfully submitted,

**LOTT & FISCHER, PL**

**s/ Ury Fischer**
Leslie J. Lott
Florida Bar No. 182196
E-mail: ljlott@lottfischer.com
Ury Fischer
Florida Bar No. 0048534
E-mail: ufischer@lottfischer.com
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191

*Of counsel:*

Andrew P. Bridges*
E-mail: abridges@fenwick.com
Tyler G. Newby*
E-mail: tnewby@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

Armen N. Nercessian*
E-mail: anercessian@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

*Pending admission Pro Hac Vice*

*Attorneys for CloudFlare, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

s/ Ury Fischer
Ury Fischer

## SERVICE LIST

*Arista Records LLC, et al. v. Vasilenko, et al.*
United States District Court, Southern District of Florida
**CASE NO. 1:15-CV-21450-COOKE/TORRES**

Service via CM/ECF generated Notices of Electronic Filing:

**GRAY-ROBINSON, P.A.**
Karen L. Stetson
E-Mail: karen.stetson@gray-robinson.com
1221 Brickell Avenue, 16th Floor
Miami, FL  33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

And

**JENNER & BLOCK LLP**
Kenneth L. Doroshow*
E-Mail: kdoroshow@jenner.com
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066

*Attorneys for Plaintiffs*

## STATUTORY APPENDIX:  RELEVANT EXCERPTS OF

## ONLINE COPYRIGHT INFRINGEMENT LIABILITY LIMITATION ACT

## 17 U.S.C. § 512

### § 512. Limitations on liability relating to material online

**(a) Transitory Digital Network Communications. —** A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if —

(1) the transmission of the material was initiated by or at the direction of a person other than the service provider;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without modification of its content.

**(b) System Caching.—**

**(1) Limitation on liability. —** A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which —

(A) the material is made available online by a person other than the service provider;

(B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and

(C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

**(2) Conditions. —** The conditions referred to in paragraph (1) are that —

(A) the material described in paragraph (1) is transmitted to the subsequent users described in paragraph (1)(C) without modification to its content from the manner in which the material was transmitted from the person described in paragraph (1)(A);

(B) the service provider described in paragraph (1) complies with rules concerning the refreshing, reloading, or other updating of the material when specified by the person making the material available online in accordance with a generally accepted industry standard data communications protocol for the system or network through which that person makes the material available, except that this subparagraph applies only if those rules are not used by the person described in paragraph (1)(A) to prevent or unreasonably impair the intermediate storage to which this subsection applies;

(C) the service provider does not interfere with the ability of technology associated with the material to return to the person described in paragraph (1)(A) the information that would have been available to that person if the material had been obtained by the subsequent users described in paragraph (1)(C) directly from that person, except that this subparagraph applies only if that technology -

(i) does not significantly interfere with the performance of the provider's system or network or with the intermediate storage of the material;

(ii) is consistent with generally accepted industry standard communications protocols; and

(iii) does not extract information from the provider's system or network other than the information that would have been available to the person described in paragraph (1)(A) if the subsequent users had gained access to the material directly from that person;

(D) if the person described in paragraph (1)(A) has in effect a condition that a person must meet prior to having access to the material, such as a condition based on payment of a fee or provision of a password or other information, the service provider permits access to the stored material in significant part only to users of its system or network that have met those conditions and only in accordance with those conditions; and

(E) if the person described in paragraph (1)(A) makes that material available online without the authorization of the copyright owner of the material, the service provider responds expeditiously to remove, or disable access to, the material that is claimed to be infringing upon notification of claimed infringement as described in

subsection (c)(3), except that this subparagraph applies only if —

> (i) the material has previously been removed from the originating site or access to it has been disabled, or a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled; and

> (ii) the party giving the notification includes in the notification a statement confirming that the material has been removed from the originating site or access to it has been disabled or that a court has ordered that the material be removed from the originating site or that access to the material on the originating site be disabled.

\* \* \*

**(j) Injunctions. —** The following rules shall apply in the case of any application for an injunction under section 502 against a service provider that is not subject to monetary remedies under this section:

**(1) Scope of relief. —**

(A) With respect to conduct other than that which qualifies for the limitation on remedies set forth in subsection (a), the court may grant injunctive relief with respect to a service provider only in one or more of the following forms:

> (i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.

> (ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

> (iii) Such other injunctive relief as the court may consider necessary to prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.

(B) If the service provider qualifies for the limitation on remedies described in subsection (a), the court may only grant injunctive relief in one or both of the following forms:

> (i) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is using the provider's service to engage in infringing activity and is identified in the

order, by terminating the accounts of the subscriber or account holder that are specified in the order.

(ii) An order restraining the service provider from providing access, by taking reasonable steps specified in the order to block access, to a specific, identified, online location outside the United States.

**(2) Considerations. —** The court, in considering the relevant criteria for injunctive relief under applicable law, shall consider —

(A) whether such an injunction, either alone or in combination with other such injunctions issued against the same service provider under this subsection, would significantly burden either the provider or the operation of the provider's system or network;

(B) the magnitude of the harm likely to be suffered by the copyright owner in the digital network environment if steps are not taken to prevent or restrain the infringement;

(C) whether implementation of such an injunction would be technically feasible and effective, and would not interfere with access to noninfringing material at other online locations; and

(D) whether other less burdensome and comparably effective means of preventing or restraining access to the infringing material are available.

**(3) Notice and ex parte orders.** — Injunctive relief under this subsection shall be available only after notice to the service provider and an opportunity for the service provider to appear are provided, except for orders ensuring the preservation of evidence or other orders having no material adverse effect on the operation of the service provider's communications network.

**(k) Definitions.—**

**(1) Service provider. —**

(A) As used in subsection (a), the term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

(B) As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A).

* * *

**(m) Protection of Privacy.** — Nothing in this section shall be construed to condition the

applicability of subsections (a) through (d) on —

       (1) a service provider monitoring its service or affirmatively seeking facts indicating infringing activity, except to the extent consistent with a standard technical measure complying with the provisions of subsection (i); or

       (2) a service provider gaining access to, removing, or disabling access to material in cases in which such conduct is prohibited by law.

**(n) Construction. —** Subsections (a), (b), (c), and (d) describe separate and distinct functions for purposes of applying this section. Whether a service provider qualifies for the limitation on liability in any one of those subsections shall be based solely on the criteria in that subsection, and shall not affect a determination of whether that service provider qualifies for the limitations on liability under any other such subsection.