UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 15-cv-21450-COOKE/TORRES

ARISTA RECORDS LLC, ATLANTIC
RECORDING CORPORATION, CAPITOL
RECORDS, LLC, ELEKTRA ENTERTAINMENT
GROUP INC., LAFACE RECORDS LLC, SONY
MUSIC ENTERTAINMENT, SONY MUSIC
ENTERTAINMENT US LATIN LLC, UMG
RECORDINGS, INC., WARNER BROS.
RECORDS INC., WARNER MUSIC GROUP
CORP., WARNER MUSIC LATINA INC., and
ZOMBA RECORDING LLC,

                          Plaintiffs,

             v.

MONICA VASILENKO and DOES 1-10, d/b/a
MP3SKULL.COM and MP3SKULL.TO,

                         Defendants.

**PLAINTIFFS' REPLY TO THIRD PARTY CLOUDFLARE INC.'S OPPOSITION
TO PLAINTIFFS' EXPEDITED MOTION FOR CLARIFICATION**

**INTRODUCTION**

      Third party CloudFlare, Inc. ("CloudFlare") does not address, let alone rebut, the key issue in this motion: by continuing to provide its services to Defendants with full knowledge of this Court's permanent injunction, CloudFlare is aiding and abetting Defendants in their ongoing defiance of the injunction. CloudFlare's silence on this point is understandable, given that CloudFlare has previously been held to have aided and abetted a similar defendant's contempt in materially identical circumstances. *See Arista Records LLC v. Tkach*, 122 F. Supp. 3d 32 (S.D.N.Y. 2015).

1

Instead, CloudFlare argues that, because *Defendants* in the underlying case were found liable for copyright infringement, the Federal Rules of Civil Procedure – and, in particular, Rule 65(d) – do not apply to it, and that the scope of the Court's injunction as to third-party service providers must be determined by a provision of the Copyright Act, 17 U.S.C. § 512(j). As explained below, CloudFlare is simply wrong on the law: Nothing in Section 512(j) – or, indeed, the Copyright Act more generally – limits the scope of injunctions under Rule 65(d). That rule, by its terms, governs *all* federal court injunctions, regardless of the basis on which they were issued, and expressly extends to third parties like CloudFlare who are "in active concert or participation with" the enjoined parties. Fed. R. Civ. P. 65(d) ("Contents and Scope of *Every* Injunction and Restraining Order" (emphasis added)). Section 512(j) is directed to circumstances having nothing to do with the present motion, and is entirely irrelevant here.

CloudFlare's complaint that Plaintiffs' motion is "procedurally unsound" is similarly meritless. *See* Non-Party CloudFlare, Inc.'s Opposition to Plaintiff's Expedited Motion for Clarification ("Opp. Br.") at 9. Plaintiffs provided CloudFlare clear notice of the Court's injunction and Defendants' ongoing contempt of it. Plaintiffs also informed CloudFlare that, were it to continue its provision of services to Defendants with knowledge of the injunction, that would constitute active concert or participation with Defendants. CloudFlare has been given ample opportunity to be heard on this issue, as the very fact of CloudFlare's opposition brief itself demonstrates. Indeed, Plaintiffs brought this motion precisely because *CloudFlare insisted that they do so*. In these circumstances, CloudFlare's contention that Plaintiffs' motion has somehow "tr[ied] to rob CloudFlare of its … due process rights," *id.*, rings especially hollow.

Although it claims to "take[] no sides in this litigation," *id.* at 1, CloudFlare has, in effect, chosen to align itself with Defendants by continuing to supply its services to the MP3Skull website, knowing full well that, by doing so, it aids and abets adjudicated and permanently-

enjoined infringers in the very conduct that this Court has ordered them to stop. Neither Rule 65(d) nor common sense countenances such a choice. Accordingly, CloudFlare should be required to cease its provision of service to the MP3Skull website immediately, in accordance with the terms of Plaintiffs' proposed Order.

## ARGUMENT

### I. Section 512(j) Does Not Limit The Scope Of Injunctions Under Rule 65(d)(2) And Has No Application Here

CloudFlare acknowledges that, had Defendants been enjoined from committing any form of wrongdoing other than copyright infringement, it would be prohibited under Rule 65(d)(2) from providing services to them. *See* Opp. Br. at 8 ("In a typical case, Rule 65(d) … articulates the scope of an injunction …."). Contrary to CloudFlare's view, however, there is nothing exceptional about the fact that Defendants' liability in the underlying case was for copyright infringement. As in any case, the injunction at issue in this case properly applies to Defendants and "all persons in active concert or participation with them …." D.E. 37; *see also* Fed. R. Civ. P. 65(d) (specifying the "Contents and Scope of *Every* Injunction and Restraining Order," which, by rule, includes all persons "in active concert or participation with" the parties enjoined (emphasis added)). In arguing otherwise, CloudFlare misconstrues both Section 512(j) and Rule 65(d).

Section 512 of the Copyright Act sets forth a series of limitations on the liability of certain online service providers when those providers are themselves accused of copyright infringement. *See* 17 U.S.C. § 512 ("Limitations on *liability* relating to material online" (emphasis added)). The purpose of these limitations is "to provide immunity to service providers from copyright infringement liability for 'passive,' 'automatic' actions in which a service provider's system engages through a technological process initiated by another *without the knowledge of the service provider*." *ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619,

625 (4th Cir. 2001) (discussing legislative history of Section 512 (emphasis added)). Section 512 is therefore concerned with cases in which the service provider *is itself a party* and potentially subject to copyright infringement liability arising from the unknowing, "innocent" provision of its services to an infringer. *Id.* Section 512(j), in particular, is concerned only with "any application for an injunction under Section 502 against a service provider" in such circumstances. 17 U.S.C. § 512(j).

That is not the case here. CloudFlare is not a party, Plaintiffs do not allege in this motion that CloudFlare is itself liable for copyright infringement, and Plaintiffs do not seek a separate injunction against CloudFlare (as they already have one against Defendants). At the same time, CloudFlare is no longer an "innocent" provider, as it is now fully aware that it is providing support to adjudicated infringers who are openly in contempt of the existing injunction and who, as CloudFlare would appear to agree, were not themselves entitled to any of the limitations on liability for copyright infringement set forth in Section 512. Section 512 was thus irrelevant to the Court's issuance of the injunction in the first instance, by which Defendants were required to, among other things, stop their infringing conduct and shut down their illegal website (which, as CloudFlare knows well, Defendants have not done). With that injunction having properly issued, the only question now before this Court is whether CloudFlare, as a non-party with actual knowledge of the injunction and Defendants' ongoing contempt thereof, should be permitted to aid and abet Defendants in their violation of the Court's order. Rule 65(d)(2) speaks directly to this question and does not involve the question of CloudFlare's liability for copyright infringement. *See, e.g., Tkach* 122 F. Supp. 3d at 37 ("a court's inquiry into the fact of aiding and abetting is 'directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation.'" (quoting *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 193 (2d Cir. 2010))). Rule 65(d)(2) is a claim-agnostic rule of general application, concerned

only with ensuring that *every* federal court injunction – regardless of the substantive legal basis for that injunction – is honored, and provides all the authority this Court needs to stop CloudFlare from aiding and abetting Defendants' ongoing violation of its existing order. Section 512(j) has no role to play here.

CloudFlare's effort to distinguish the relevant precedent is unavailing. CloudFlare contends that the *Tkach* case "rested upon *trademark, not copyright*, claims," Opp. Br. at 8 (emphasis in original), but that is manifestly not so. While the claims in that case included trademark claims, the injunction to which CloudFlare was ultimately bound also included copyright claims, *see, e.g.,* 122 F. Supp. 3d at 33-34 (noting that defendants were enjoined "from '[d]irectly or secondarily infringing Plaintiffs' copyrighted sound recordings'"), and nothing in the court's decision in any way "rested upon" the non-copyright aspects of the claims. To the contrary, the *Tkach* court properly construed Rule 65(d) to preclude CloudFlare from aiding and abetting the defendants' violation of the injunction in its entirety, without regard to the substantive claims on which the injunction was based. *Id.* at 38. Indeed, to have drawn any distinction based on the particular claims at issue would have made no sense, for there is no principled reason why Rule 65(d) can stop a service provider from aiding and abetting an enjoined defendant's infringement of trademarks, but would not be available to stop the provider from aiding and abetting that same defendant's online infringement of copyrights through the very same act of providing service to the defendant's website.

In short, there is no basis – whether in the case law, the rules, or common sense – for CloudFlare's remarkable position that it can knowingly continue to aid and abet an enjoined infringer until an order is issued under Section 512(j) directing it to stop doing so. As one commentator has observed, "CloudFlare fails to produce one single cite showing that *any* injunctive-relief statute, whether copyright or otherwise, has ever been deemed to preempt the

5

longstanding rule that it's contempt of court to aid and abet an enjoined defendant." Devlin Hartline, *CloudFlare's Desperate New Strategy To Protect Pirate Sites*, Center for the Protection of Intellectual Property, Aug. 17, 2016, http://cpip.gmu.edu/2016/08/17/cloudflares-desperate-new-strategy-to-protect-pirate-sites/ (emphasis in original).

## II. CloudFlare's Allegations Of "Procedural Improprieties" In Plaintiffs' Motion Are Groundless

CloudFlare contends that the Court should reject Plaintiffs' motion as "procedurally unsound" in certain respects. Opp. Br. at 9. This contention is utterly unfounded.

CloudFlare charges, first, that Plaintiffs improperly brought an "emergency" motion without complying with the Local Rules for such motions. *Id.* But Plaintiffs did not file an "emergency" motion; rather, they merely designated their motion for clarification as "expedited" to indicate some time-sensitivity to the motion under the circumstances. The Local Rules impose no special procedural requirements in such instances and, in any event, CloudFlare has plainly not been prejudiced in any way by the existing proceeding. Indeed, given that *CloudFlare insisted that Plaintiffs bring this motion*, it is difficult to see how CloudFlare could have been prejudiced by it.

More broadly, CloudFlare suggests that the issuance of the injunction against Defendants without CloudFlare's participation in the first instance denied it due process without "notice and an opportunity to be heard." Opp. Br. at 9-10. This complaint is especially puzzling, given that CloudFlare, in filing its opposition, has demonstrated that it has been given ample notice of the injunction (as well as Defendants' ongoing violation of it) and is exercising its opportunity to be heard through this very proceeding. *See, e.g.,* D.E. 42-1, Exhibits C & E. Indeed, this is precisely how Rule 65 is intended to work when third parties are to be bound by existing injunctions, and it is why courts have rejected claims of due process violations in similar circumstances. *See, e.g., NML Capital*, *Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir.

6

2013) (rejecting non-parties' due process argument as without merit because, "when questions arise as to who is bound by an injunction through operation of Rule 65, district courts will not 'withhold a clarification in the light of a concrete situation.'" (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945))).

Moreover, CloudFlare's argument only serves to underscore the impracticality of CloudFlare's view that Section 512(j) has any role to play here at all. According to CloudFlare, if the Court's injunction "had [] originally been intended to apply to CloudFlare," then the Court's initial issuance of it should have followed "the procedural requirements and scope restrictions of Section 512(j)." Opp. Br. at 10-11. Setting aside the fact that Plaintiffs could not have known, at the time they sought the injunction against Defendants, that they would need to seek application of the injunction to CloudFlare after exhausting other means of redress,[1] CloudFlare's position would lead to absurd results. In CloudFlare's view, any time a copyright plaintiff obtains a judgment against an infringer and seeks injunctive relief that could potentially be thwarted with the support of an online service provider, that plaintiff would first need to identify and notify every service provider that could conceivably provide such service to the defendant, and only then proceed with a motion for relief under Section 512(j) against every one of those providers. Such a proceeding could include, in any given case, countless conduit online service providers, search engines, web hosts, content delivery networks, and other service providers with a role in supporting the ongoing function of the defendant's operations. No injunction in any copyright case has ever involved such an absurd and infeasible process, and

---

[1] CloudFlare asserts that Plaintiffs "sat on [the injunction] for months before even alerting CloudFlare of any intention to apply it against CloudFlare." Opp. Br. at 9. But as Plaintiffs pointed out in their opening brief, Plaintiffs notified CloudFlare only after having first spent that time exhausting their efforts to have domain registrars and registries comply with the Court's order, which yielded some (but ultimately incomplete) success, thereby necessitating the outreach to CloudFlare. *See* D.E. 38 at 4.

7

nothing in either Rule 65(d) or Section 512(j) requires it.

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief in support of their expedited motion for clarification, Plaintiffs respectfully request that CloudFlare be ordered to immediately cease and desist from its provision of any and all services and other means of support to Defendants and their MP3Skull website, as provided in the proposed Order submitted concurrently with the motion.

Dated: August 22, 2016 Respectfully submitted,

By: __/s/ Karen L. Stetson_____
Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue
16th Floor
Miami, Fl 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

JENNER & BLOCK LLP
Kenneth L. Doroshow (*admitted pro hac vice*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*