UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 15-cv-21450-COOKE/TORRES

ARISTA RECORDS LLC, ATLANTIC
RECORDING CORPORATION, CAPITOL
RECORDS, LLC, ELEKTRA ENTERTAINMENT
GROUP, INC., LAFACE RECORDS LLC, SONY
MUSIC ENTERTAINMENT, SONY MUSIC
ENTERTAINMENT US LATIN LLC, UMG
RECORDINGS, INC., WARNER BROS.
RECORDS INC., WARNER MUSIC GROUP
CORP., WARNER MUSIC LATINA INC., and
ZOMBA RECORDING LLC,

                      Plaintiffs,

     v.

MONICA VASILENKO and DOES 1-10, d/b/a
MP3SKULL.COM and MP3SKULL.TO,

                      Defendants.

**PLAINTIFFS' OPPOSITION TO NON-PARTY CLOUDFLARE, INC.'S
RULE 60(B) MOTION TO VACATE THE COURT'S MARCH 23, 2017 ORDER**

**INTRODUCTION**

On March 23, 2017, this Court issued an Order granting in part and denying in part Plaintiffs' August 4, 2016 Motion for Clarification. *See* Order of March 23, 2017, ECF No. 48 (the "March 23 Order"). In that Order, the Court held that the question of whether third-party CloudFlare, Inc. ("CloudFlare") was bound by the Court's March 22, 2016 injunction against the Defendants was governed by Rule 65(d) of the Federal Rules of Civil Procedure and not, as CloudFlare contended, Section 512(j) of the Digital Millennium Copyright Act ("DMCA"). *Id.*

at 3-4. However, because CloudFlare had not yet been heard on the issue of whether its provision of Internet services to Defendants rendered CloudFlare in "active concert or participation" with them, the Court denied the balance of Plaintiffs' motion without prejudice, noting that, "[a]t the appropriate time, … the parties *may* file motions related to whether CloudFlare aided and abetted Defendants in violating the injunction." *Id.* at 5 (emphasis added).

Now, after a delay of more than four months, and with no evidence of any harm to it, CloudFlare argues that the Court should vacate its March 23 Order under Rule 60(b) because, according to CloudFlare, Plaintiffs' Motion for Clarification was moot before the Court issued its Order. Cloudflare further asserts that vacatur is warranted because Plaintiffs supposedly "lack[ed] candor" with the Court regarding the status of the domain names at issue. *See* Non-Party Cloudflare, Inc.'s Rule 60(b) Motion to Vacate the Court's March 23, 2017 Order at 8, ECF No. 49 ("CloudFlare's Motion"). CloudFlare's Motion is specious and proceeds on the basis of misstatements of fact – misstatements that Plaintiffs have already addressed in prior correspondence with CloudFlare. *See* Letter from Kenneth L. Doroshow to Andrew P. Bridges dated Apr. 25, 2017, appended as Exh. B to Declaration of Andrew P. Bridges dated July 20, 2017, ECF No. 49-2.

CloudFlare bears a heavy burden to justify the "extraordinary remedy" of vacatur under Rule 60(b), a burden that CloudFlare cannot meet here. First, Plaintiffs' motion was neither moot when it was filed on August 3, 2016, nor moot when the Court issued its March 23 ruling. As shown below, official public records of the Domain Name System ("DNS") indicate that CloudFlare was the designated provider of authoritative domain name services to the websites at issue in Plaintiffs' motion at the time the motion was filed, and continued to provide such service to Defendants well into this year, including as late as April 17, 2017. CloudFlare's arguments to

the contrary rely largely on misdirection, pointing to the status of domain names that expressly were *not* at issue in Plaintiffs' motion.

Second, even if Defendants had stopped using CloudFlare's services before the Court issued its March 23 Order, Plaintiffs' motion would still have been ripe for decision.  By its own admission, CloudFlare took no steps to prevent Defendants from using its services at any time.  Given Defendants' established practice of moving from domain to domain and from service to service throughout this case in contempt of this Court's orders, Defendants could easily have resumed—and may tomorrow resume—their use of CloudFlare's services.  Plaintiffs' motion was therefore fully justiciable at the time of the Court's March 23 Order.

Finally, there is no "prejudice" to CloudFlare from allowing the Court's March 23 Order to remain on the record.  The March 23 Order does not require CloudFlare to do anything.  All that Order did was to clarify that Rule 65, and not Section 512(j) of the DMCA, applied.  The Court did not decide whether CloudFlare aided and abetted Defendants in their violation of the Court's injunction, leaving the pursuit of that question to a future motion "[a]t the appropriate time." March 23 Order at 5.  CloudFlare thus fails to identify any reason for this Court to vacate its March 23 Order in this otherwise closed matter.  CloudFlare's Motion should be denied.

## ARGUMENT

Federal Rule of Civil Procedure 60(b) permits a court on "motion and just terms" to relieve a party from a judgment or order.  *See* Fed. R. Civ. P. 60(b).  The party seeking relief under Rule 60(b) "has the burden of showing that absent such relief, an extreme and unexpected hardship will result." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (internal quotation marks omitted) (discussing Rule 60(b)(6)); *see also, e.g.*, *Hodge v. Dep't of Housing & Urban Dev.*, 862 F.2d 859, 862 (11th Cir. 1989) (explaining that the party seeking relief under

Rule 60(b)(5) has burden); *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987) (same under Rule 60(b)(2) and (b)(3)).[1]

I. **Plaintiffs' Motion Was Not Moot When The Court Issued Its March 23 Order.**

CloudFlare's primary contention is that Plaintiffs' Motion became moot before this Court issued its March 23 Order. *See* CloudFlare's Motion at 3-4, 7-8. In addition to a party's general burden under Rule 60(b), a party's "burden of demonstrating mootness 'is a heavy one.'" *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *see also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (The burden of "persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again *lies with the party asserting mootness*." (emphasis in original) (internal quotation marks omitted) (alteration in original)). CloudFlare has not met its burden here.

As the DNS records make clear, CloudFlare provided the authoritative domain name servers for all eleven of the "Active MP3Skull Domains" at the time Plaintiffs filed their Motion for Clarification on August 4, 2016. *See* Exh. A to Second Declaration of Kenneth L. Doroshow, dated Aug. 3, 2017 ("Doroshow Decl.") appended hereto; *see also* Fourth Declaration of Mark McDevitt, dated Aug. 4, 2016 ("Fourth McDevitt Decl."), ECF No. 38-1. Although CloudFlare claims that six of these domain names "never used Cloudflare services at all," *see* CloudFlare's Motion at 3, this claim (which itself tacitly concedes that Defendants *did* use CloudFlare's services for at least five of the then-active domain names) is flatly contradicted by the public record.

---

[1] CloudFlare cites to a handful of cases for the proposition that vacatur under Rule 60(b) "is applied most liberally to judgments in default," *see* CloudFlare's Motion at 7 (citations and quotation marks omitted). But the March 23 Order—unlike the Court's injunction against *Defendants*, which is not at issue here—was not a default judgment; rather, the Order was the result of a fully contested motion. CloudFlare's cited authorities for a lesser burden are therefore wholly inapposite.

4

Moreover, CloudFlare's newly invented position is also inconsistent with CloudFlare's own statements at the time. Contrary to CloudFlare's claim now to have been "rushed" to respond to Plaintiffs' motion last year, *see* CloudFlare's Motion at 7-8, Plaintiffs gave CloudFlare more than a month's advance notice of the Court's injunction and the fact that CloudFlare was supplying services to the enjoined Defendants' websites. *See* Doroshow Decl., Exh. B (email correspondence between Plaintiffs' counsel and CloudFlare's in-house counsel from June 30, 2016 to Aug. 12, 2016). Rather than dispute its provision of service to these websites at that time, CloudFlare fully acknowledged it, arguing instead that its service did not amount to "aiding and abetting" and that Plaintiffs would need to file their motion for clarification in order for CloudFlare to be required to discontinue such service. *Id.*

Plaintiffs followed CloudFlare's suggestion and filed a Motion for Clarification on August 4, 2016. *See* Plaintiffs' Motion for Clarification, ECF No. 38 ("Plaintiffs' Motion"). In the ensuing months during which Plaintiffs' motion was pending, several of Defendants' illicit websites stopped using CloudFlare's services. But others did not. *See, e.g.*, Doroshow Decl., Exh. A (Whois record for mp3skull.ms as of March 2, 2017 showing authoritative nameservers as "tara.ns.cloudflare.com" and "amit.ns.cloudflare.com"). Indeed, another of Defendants' illicit websites that came to prominence after Plaintiffs' motion was submitted—emp3world.ch— continued to use CloudFlare's services until well *after* the March 23 Order, as late as April 17, 2017. *See* Doroshow Decl., Exh. C (Whois record for emp3world.ch showing authoritative nameservers as "amit.ns.cloudflare.com" and "tara.ns.cloudflare.com" until April 17, 2017).[2] Unquestionably, then, there was nothing "advisory" about the Court's March 23 Order.

---

[2] Because Plaintiffs were unaware of emp3world.ch until after the submission of their Motion for Clarification, it was not identified in the motion's non-exclusive list of the then-"Active MP3Skull Domains." But the site was clearly operated by the Defendants in this case, as

But even if Defendants had ceased their use of CloudFlare's services for *all* of their websites before the March 23 Order, and even if *all* of Defendants' websites had gone dark by then, Plaintiffs' motion would still not have been moot. As Plaintiffs have explained on multiple occasions in this case, Defendants had an established practice of moving their illicit operations from domain to domain and from service to service as a means of frustrating Plaintiffs' enforcement efforts. *See, e.g.*, Fourth McDevitt Decl. ¶ 2 ("As summarized in my previous declarations, Defendants have, over the past year, repeatedly moved their MP3Skull website from domain to domain to evade and frustrate Plaintiffs' enforcement efforts."); Plaintiffs' Motion to Amend Final Judgment, dated Mar. 17, 2016, at 2, ECF No. 36 (noting that "Defendants have openly flouted [the Court's initial injunction], moving the MP3Skull website to new online locations with different domain names with the intent of frustrating Plaintiffs' efforts to enforce the Court's order."). By its own admission here, CloudFlare has never taken any steps to prevent Defendants from using their services. *See, e.g.*, CloudFlare's Motion at 6 (claiming that "Plaintiffs were apparently able to obtain full compliance with the injunction without CloudFlare having to take any action at all."). There was therefore nothing preventing Defendants from resuming their service with CloudFlare, and CloudFlare permitting that to happen, at any time – then or now.[3]

---

evidenced by the identical "Azarov Holdings" domain name registrant that appears in nearly all of the MP3Skull domain records. *Compare* Doroshow Decl., Exh. C (emp3world.ch Whois record) *with, e.g.*, *id.*, Exh. A. (Whois records for mp3skull.at, mp3skull.cm, mp3skull.cz, mp3skull.gd, mp3skull.la, mp3skull.mn, mp3skull.ms, and mp3skull.vg). *See also, e.g.*, Order dated Aug. 5, 2015, ECF No. 21 (granting Plaintiffs leave to serve Defendants by alternative means, including by email to "emp3world@gmail.com").

[3]It is entirely reasonable to assume that Defendants may revert to their use of CloudFlare, given CloudFlare's well-documented reputation as a service provider of choice among pirate websites. *See, e.g.*, Devlin Hartline, *CloudFlare's Desperate New Strategy To Protect Pirate Sites*, Center for the Protection of Intellectual Property, Aug. 17, 2016 ("Pirate sites have flocked" to

It is well settled that the voluntary cessation of challenged activity moots a case "only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors*, 528 U.S. at 222 (emphasis in original) (internal quotation marks omitted); *see also, e.g.*, *Cook v. Bennett*, 792 F.3d 1294, 1299 (11th Cir. 2015) (A party "asserting mootness must show that 'subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (alteration in original) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968))); *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, No. 13-60514-CIV, 2013 WL 6834804, at *12 (S.D. Fla. Dec. 23, 2013) (declining to find mootness where defendant "has not met its burden of establishing *with absolute clarity* that all infringement has ceased" (emphasis added)). Given Defendants' consistent efforts to flout this Court's orders as well as CloudFlare's inaction in the face of the Court's injunction, there was every reason to expect that Defendants' use of CloudFlare's services for their illicit purposes would resume, even assuming it had ceased by that time (which, as already demonstrated, it had not). Accordingly, Plaintiffs' Motion was fully justiciable at the time of the March 23 Order and that Order should be left to stand.

## II. CloudFlare Fails To Provide Any Justification For Vacatur Of The Court's March 23 Order.

CloudFlare contends that vacatur of the March 23 Order is warranted because, among other things, Plaintiffs supposedly failed to "disclose the full facts" about the domains at issue and "lack[ed] candor" in failing to notify the Court or CloudFlare that their motion had allegedly become moot before the Court's ruling. *See* CloudFlare's Motion at 8. This contention is

---

CloudFlare, which "has been all-too-ready to lend a helping hand to even the most notorious pirates."), *available at* https://cpip.gmu.edu/2016/08/17/cloudflares-desperate-new-strategy-to-protect-pirate-sites/.

7

baseless, given that Plaintiffs' motion was *not* moot before the Court's ruling and, therefore, there was nothing of which to notify the Court in this respect.  *See supra* at 4-7.

CloudFlare also claims to have "revealed" through its own "investigation" that Plaintiff Sony Music Entertainment owned "seven of the twenty domains" identified in the Court's injunction against Defendants, misleadingly suggesting that Plaintiffs lacked candor by supposedly withholding this information from the Court.  *See* CloudFlare's Motion at 3.  As Plaintiffs have already explained to CloudFlare, however, their Motion for Clarification shows otherwise.  *See* Bridges Decl., Exh. B.  On page 3 of Plaintiffs' Motion, Plaintiffs informed the Court that its injunction "allowed Plaintiffs to obtain the compliance of numerous third parties—specifically, domain name registries and registrars who suspended several of the MP3Skull Domains and *transferred them to Plaintiffs' control*, as the [injunction] required."  Plaintiffs' Motion at 3 (emphasis added); *see also* Fourth McDevitt Decl. ¶ 2 ("Following this Court's [injunction], Plaintiffs successfully obtained the compliance of several domain registries and registrars to suspend and transfer to Plaintiffs many of the domain names by which Defendants operated their MP3Skull website.").  Every one of the domain names that CloudFlare claims to have identified from its "investigation" falls within that category, a fact that Plaintiffs prominently disclosed to the Court.  In fact, Plaintiffs made clear that their motion was directed to *other* domains—defined clearly at page 6 of Plaintiffs' motion as the "Active MP3Skull Domains"—all of which remained in Defendants' control, and all of which were serviced by CloudFlare at the time.  Plaintiffs' Motion at 6.  CloudFlare's effort to tar Plaintiffs with baseless allegations of a "lack of candor," *see* CloudFlare's Motion at 8, or even "fraud," *id.* at 7 (citing cases), has no place here and should not be countenanced.

8

More fundamentally, CloudFlare argues that the Court should vacate its March 23 Order to "prevent any jeopardy or adverse effect that the Order might impose on non-party Cloudflare." CloudFlare's Motion at 1. But CloudFlare fails to identify *any* "jeopardy or adverse effect" that the Order may pose to it, and in fact there is none. As CloudFlare concedes, the March 23 Order does not require CloudFlare to do anything—the Court made no finding that CloudFlare was in active concert or participation with Defendants. *Id.* at 3, 5-6; *see also* March 23 Order at 4-5. Instead, the Court merely clarified the relationship of Rule 65(d) and Section 512(j) of the DMCA. CloudFlare's assertion that Plaintiffs somehow seek "to prejudice Cloudflare by allowing" the March 23 Order "to remain on the record," CloudFlare's Motion at 4, is therefore without basis, as is CloudFlare's attempt to invoke Rule 60(b)(5) to vacate the Order on the ground that "applying [it] 'prospectively is no longer equitable.'" *Id.* at 8 (quoting Rule 60(b)(5)).[4]

Nor do CloudFlare's other purported grounds for vacatur pass muster. CloudFlare cites Rule 60(b)(2) and claims vaguely that "newly discovered evidence" warrants vacatur here. Presumably, the evidence to which CloudFlare refers is the result of its "investigation" purporting to show that Plaintiffs' motion was moot before the March 23 Order. As explained above, however, Plaintiffs' request for relief was not moot. *See supra* at 4-7. Moreover, under Rule 60(b)(2), CloudFlare must show that it used "due diligence" to discover any new evidence.

---

[4] CloudFlare also appears vaguely to complain that "Plaintiffs have not taken any steps … since" the March 23 Order "to inform the Court about the mootness of their motion." CloudFlare Motion at 1. But Plaintiffs have no motion pending before this Court that would have called for such steps. To the contrary, in its March 23 Order, this Court fully resolved Plaintiffs' Motion, granting it in part and denying it in part, and advising the parties that, "[a]t the appropriate time, … the parties may file motions related to whether CloudFlare aided and abetted Defendants in violating the injunction." March 23 Order at 5 (emphasis added). Should CloudFlare resume its provision of services to Defendants, Plaintiffs will certainly follow the Court's guidance and file such a motion at that time.

9

*Taylor v. Texgas Corp.*, 831 F.2d at 259; *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 597 (5th Cir. 1980). But CloudFlare provides no explanation for why, if it believed the issue was moot based on *records in its own possession*, it failed to raise the issue until now, well over a year since Plaintiffs first informed CloudFlare of the Court's injunction and asked CloudFlare to cease its provision of service to the Active MP3Skull Domains, *see* Doroshow Decl., Exh. B, and more than four months after the Court issued its March 23 Order.

It is evident that the only reason why CloudFlare wants the Court to vacate its March 23 Order is that it does not like the Court's ruling on the purely legal issue of Rule 65(d)'s scope. *See* March 23 Order at 3-4. But that is no basis for vacatur. To the contrary, courts regularly refuse to vacate opinions that resolved novel questions of law and that would be of assistance to future courts and litigants. *See, e.g.*, *Humphreys v. DEA*, 105 F.3d 112, 116 (3d Cir. 1996) (declining to vacate appellate decision "[i]n light of the complete absence of case law interpreting the relevant statute"); *Avellino v. Herron*, 181 F.R.D. 294, 297 (E.D. Pa. 1998) (denying motion to vacate because, given the "novelty of the issues" raised, "the public has a stake in preserving them as legal precedents"); *cf. Coty Inc. v. C Lenu, Inc.*, No. 10-21812-CIV, 2011 WL 573837, at *7 (S.D. Fla. Feb. 15, 2011) (declining to vacate discovery order because, among other reasons, the order "may have persuasive value to future litigants and courts addressing similar discovery disputes"). Accordingly, the Court should ignore CloudFlare's baseless and manufactured justifications for vacatur of the March 23 Order and should deny CloudFlare's motion.

## CONCLUSION

For the foregoing reasons, CloudFlare's Rule 60(b) Motion to Vacate the Court's March 23, 2017 Order should be denied.

Dated: August 3, 2017                               Respectfully submitted,

/s/ Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Fascimile: (305) 416-6887

JENNER & BLOCK LLP
Kenneth L. Doroshow (*admitted pro hac vice*)
1099 New York Ave., NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court and furnished via CM/ECF to all participating recipients, on this 3rd day of August, 2017.

By: /s/ Karen L. Stetson